Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue
7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
YESH MUSIC, LLC, and JOHN K. EMANUELLE, individually,

                    Plaintiffs,

                v.

DEEZER INC. and BLOGMUSIK S.A.S. d/b/a DEEZER,

                    Defendants.
-----------------------------------------------------------------x

Index No.: 15-cv-6265

**COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT**

      Plaintiffs YESH MUSIC, LLC and JOHN EMANELE, by and through their attorneys at GARBARINI FITZGERALD P.C., bring this Complaint and Jury Demand against Defendants DEEZER INC. and BLOGMUSIK S.A.S. d/b/a DEEZER based on copyright infringement pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act" or "Act").

### NATURE OF THE ACTION

      1.    Defendant DEEZER INC. and BLOGMUSIK S.A.S. d/b/a DEEZER violated Section 115 of the Act, and willfully infringed Plaintiffs' one hundred and eighteen (118) registered copyrights identified in the registration certificates attached as **Exhibit A** hereto (the

"Copyrighted Compositions"), by making Plaintiffs' Copyrighted Compositions available in the United States without a license.

2. Specifically, in or about October 2014, Defendants made Plaintiffs' one hundred and eighteen (118) Copyrighted Compositions available for streaming and tethered download on Defendants' jointly owned music streaming service in the United States referred to here as the "Deezer Service". Prior to October 2014, BLOGMUSIK S.A.S. d/b/a DEEZER operated solely external to the United States, and was not subject to Section 115. But in October 2014, BLOGMUSIK S.A.S., in conjunction with DEEZER INC., made its music streaming service available in the United States to purchasers of BOSE and Sonos speakers.

3. Defendants' United States service is an interactive subscription service subject to Section 115 of Title 17 of the United States Code. Under Section 115, Defendants were required to serve a Notice of Intent to Obtain a Compulsory License ("NOI"), in the form proscribed by 37 CFR § 201.18, within thirty (30) days from the date each Copyrighted Composition was included on its service.

4. As of the date of this Complaint, Defendant DEEZER INC. has served zero NOIs on Plaintiffs. Defendant BLOGMUSIK S.A.S. served facially invalid NOIs for fifteen (15) of the Copyrighted Compositions. The NOIs that were served on YESH by BLOGMUSIK S.A.S. were invalid because they were served at least one year after the songs were made available on Defendants' Service. The NOIs served also failed to comply with the notice requirements proscribed by Section 115 because they gave false dates of first use or no date of first use.

5. Defendants collectively failed to serve an NOI for one hundred and one (101) of YESH's one hundred and sixteen (116) Copyrighted Compositions.

6.     Defendants made available all 109 musical compositions of Plaintiff John K. Emanuele, which were subject to two (2) copyright registrations.  Defendants failed to serve an NOI for any of Plaintiff EMANUELE's musical compositions.  As a direct result, Defendants have infringed both of EMANUELE's copyrights at issue.

7.     Defendants were contacted by correspondence from counsel dated June 20, 2015, but elected to ignore Plaintiffs' counsel and continue to stream the Copyrighted Compositions.  Defendants are afforded tremendous rights under Section 115 of the Copyright Act.  Defendants can compel Plaintiffs to give them a "mechanical" license, and charge a ridiculously low per stream rate for the "mechanical" license.  In return for these tremendous powers, Defendants are strictly obligated to abide by the statutory notice provisions of Section 115; which Defendants have elected to ignore.

8.     As a result, Defendants have lost their right to serve compulsory licenses for Plaintiffs' Copyrighted Compositions.  Further, Defendants' failure to comply with Section 115 was done as a matter of cost-cutting business practice, and only an award at the higher end of the statutory framework will serve to curtail Defendants' predatory behavior as detailed below.

## PARTIES

9.     Plaintiff Yesh Music, LLC is a limited liability company organized under the laws of the State of New York, with its principal offices located at 75-10 197th Street, Flushing, New York.  YESH is engaged in, among other things, the business of music publishing and otherwise commercially exploiting its copyrighted sound recordings of the band *The American Dollar*.  The sole members of Plaintiff are Richard Cupolo and John Emanuele, who are also the sole composers of the Copyrighted Compositions.

10. Plaintiff John K. Emanuele is an individual and resident of Queens. EMANUELE released two collections of songs under the name "Zero Bedroom Apartment", which Defendants elected to make available to the public in the United States without service of an NOI or payment of royalties.

11. Plaintiffs are informed and believe, and on that basis aver, that Defendant DEEZER INC. is a Delaware corporation with a principal place of business located at 527 Howard St. 4th, San Francisco, CA 94105. DEEZER INC. is the North American subsidiary of French corporation BLOGMUSIK S.A.S. d/b/a DEEZER, and entered the Unites States market in October 2014 in partnership with BOSE and Sonos speaker makers.

12. Plaintiffs are informed and believe, and on that basis aver, that Defendant BLOGMUSIK S.A.S. d/b/a DEEZER, entered the United States market in October 2014 in partnership with BOSE and Sonos speaker makers and DEEZER INC. BLOGMUSIK S.A.S. d/b/a DEEZER served NOIs for fifteen (15) songs, all of which were facially invalid or expired.

13. Defendants DEEZER INC. and BLOGMUSIK S.A.S. jointly own operate the Deezer Music streaming service at issue.

## JURISDICTION AND VENUE

14. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.).

15. Plaintiffs have the right to bring the within action pursuant to 17 U.S.C. § 501(b).

16. Personal jurisdiction over Defendants is proper in this Court, among other reasons, on the ground that Defendants, through their interactive web-based subscription service, caused the distribution of the Copyrighted Compositions throughout the State of New York,

including within this Judicial District. Other wrongful conduct alleged herein, occurred, in part, in the State of New York and in this Judicial District.

17. The Court has personal jurisdiction over Defendant DEEZER pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below.

18. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c).

19. Copies of each certificate issued by the U.S. Copyright Office and assignments registered with the U.S. Copyright Office are annexed and incorporated hereto respectively as **Exhibits A** and **B.**

20. Each of Copyrighted Compositions was registered within three months of publication, and satisfies the registration prerequisite under 17 U.S.C. 412(c).

## FACTS APPLICABLE TO BOTH PLAINTIFFS

21. As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted work.

22. Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the work by another constitutes copyright infringement.

23. When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical works by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

24. Although recording technology has changed since 1909, licenses to record musical compositions on such media continue to be called "mechanical licenses."

25. The compulsory mechanical license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits one wishing to record a copyrighted nondramatic musical work to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty. But the availability of compulsory mechanical licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires in pertinent part that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the work, serve notice of intention to do so on the copyright owner."

26. Under Section 115, the consequences of any lapse are severe: "failure to serve or file the notice required by clause (1) forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement ..."

27. The failure to serve the notice of intention before the start of distribution precludes the creation of a compulsory license, and it does so both as to copies distributed prior to service and as to copies distributed thereafter.

28. The tremendous power granted to Defendants under Section 115 is balanced by the strict obligations regarding notice. Defendant intentionally failed to adhere to its Section 115 obligations, while enjoying all of the benefits afforded by Section 115.

## DEEZER

29. Defendants claim to be "the leading global on-demand music streaming service available in more than 186 countries with over 6 million total subscribers."

30. Defendants boast a catalogue of 35 million songs.

31. BLOGMUSIK S.A.S. d/b/a DEEZER made its entrance into the United States market in or about October 2014 through a partnership with speaker makers Sonos and BOSE and its U.S. subsidiary DEEZER INC. BLOGMUSIK S.A.S. d/b/a DEEZER and DEEZER INC. are collectively referred to here as DEEZER due to their joint ownership and operation of the U.S. Deezer service.

32. The service, "Deezer Elite on Sonos", is available to Sonos customers in the United States for a promotional $9.99-a-month price for those who sign up for a full year. That represents a half-off cut of DEEZER's standard rate of $19.99 for the new service in the United States.

33. BOSE SoundLink and BOSE SoundTouch customers receive a unique code that can be redeemed at <Bose.com/Deezer> where the user can create their "Deezer" account in the United States.

34. When the BOSE or Sonos customer opens a Deezer account, that user is sent a special link that enables the Deezer application on the user's smartphone.

35. The user can then stream all songs from the DEEZER library, including Plaintiff's Copyrighted Compositions, in the United States.

**FACTS APPLICABLE TO YESH**

36. YESH consists of two men who have been professional musicians since they were 16 years old. In fact, at 16 years old, John Emanuele and Rich Cupolo played at CBGB and recorded and released two EPs. While attending Townsend Harris High School in Queens, Emanuele and Cupolo won the Bertlesmann Songwriting contest. Since they were 25 years old,

7

Emanuel and Cupolo, now thirty, have exclusively earned their living from exploiting their Copyrighted Compositions.

37. Digital downloads represent 50% of the money generated from the Copyrighted Compositions. The other 50% comes from licensing for varied uses including motion pictures, commercials, and video games. Examples of some of the licensed uses are as follows:

| Motion Pictures | Production Company |
|---|---|
| Extremely Loud & Incredibly Close | Warner Brothers |
| Up In The Air | Paramount Pictures |
| Coast Modern | Two Fold Film |
| Damnation | Felt Soul Media |
| Eastern Rises | Felt Soul Media |
| Officer Down | Felt Soul Media |
| Yami no Ichi Nichi | Mario Junn |
| Nuclear Family | Ian Hawkins |

| Television Program | Production Company |
|---|---|
| CSI: Miami | CBS/Paramount |
| Spring Watch | Fox Television |
| Nike Battlegrounds | MTV/Viacom |
| Real World/Road Rules | Bunim Murray/MTV |
| Red Band Society | Fox Television |
| Hawthorne | TNT Networks |
| Human Planet | Discovery Network |

8

| | |
|---|---|
| Outside Today | Outside TV |
| Mrs. Eastwood & Co | Bunim Murray/MTV |
| Teen Mom | MTV/Viacom |
| Sixteen and Pregnant | MTV/Viacom |
| Keeping Up With The Kardashians | Bunim Murray/E Television |
| Alaska: The Last Frontier | Discovery Networks |
| The Vineyard | ABC Family |
| Gott und die Welt | German TV ARD |
| America's Psychic Challenge | Bunim Murray Productions |
| Caged | MTV/Viacom |
| True Life | MTV/Viacom |
| This Is How I Made It | MTV/Viacom |
| TO Show | VH1/Viacom |
| Styl'd | MTV/Viacom |
| Life of Ryan | MTV/Viacom |
| If You Really Knew Me | MTV/Viacom |
| Taboo Nation | National Geographic |
| Shahs of Sunset | Ryan Seacrest Productions |
| How I Rock It | Ryan Seacrest Productions |
| Popland | MTV/Viacom |

| Commercials | Company |
|---|---|
| Infiniti Automobile | Infiniti Automobiles |
| Samsung Smart TV | Samsung |
| GoPro Camera | GoPro Cameras |
| Elle Magazine UK | Dubai Teaser | Elle Magazine UK |
| Pre-Auction Statement | Leonardo DiCaprio Foundation |
| Subaru Online Advertisement | Subaru (Switzerland) |
| Burton Snowboard | Burton Snowboards |
| O'Neill Europe Advertisements | O'Neill Europe |

|   |   |
|---|---|
| Dove | Dove |
| DC Shoes | DC Shoes |
| Converse Web | Converse |
| NBA Playoffs Commercial | ESPN |
| CanonOptics Advertisement | CanonOptics / Burton |
| Telluride Tourism Board | Telluride Tourism Board |
| Unit Clothing | Unit Clothing Enter. |
| Viasat Baltics | Viasat Baltics |
| Morgan Stanley | Morgan Stanley/Chief Ent. |

| Video Game | Company |
|---|---|
| The Amazing Spiderman | Activision |

38.     Defendants intentionally infringed YESH's one hundred and sixteen (116) Copyrighted Compositions, by, among other things, making the Copyrighted Compositions available for unlawful and unauthorized digital download and distribution to the public through their interactive Internet subscription music service found at <www.Deezer.com> or <BOSE/Deezer.com> and through Defendants' smartphone application (the "Deezer Service"), in the United States, but without a license under 17 U.S.C. § 115.

39.     The Deezer Service is a subscription service that allows the user to pick which song the user wants to hear, and is therefore an interactive service pursuant to 17 U.S.C. § 114(j)(7) of the Copyright Act.  As such, Defendants were obligated to obtain licenses for both the sound recordings ("Master Recording License") and compositions ("Mechanical License") for every song it offers on its service.

40.     The license for the physical sound recordings here -- Master Recording License -- was granted to BLOGMUSIK S.A.S. d/b/a DEEZER through TuneCore.  TuneCore functions like a music label, allowing artists to submit the master recordings through TuneCore to various

"Digital Stores" for review.  DEEZER INC. has no separate or independent Master Recording License.

41.     At no time did TuneCore hold itself out as conveying a mechanical license for the compositions submitted on behalf of Plaintiff.  Further, it is axiomatic that a mechanical license to record and distribute the songs must be obtained in order to lawfully make the recordings available for temporary stream or permanent download.

42.     Plaintiff YESH, through TuneCore, made numerous collections of individual compositions available to Defendant BLOGMUSIK S.A.S. d/b/a DEEZER for review and use on its service, which was not available in the United States when each submission was made.

43.     Plaintiff YESH does not have "albums" of songs in the traditional sense, but releases collections of individual songs which are not an integrated work.  For that reason, numerous musical compositions appear in multiple collections.

44.     Defendant BLOGMUSIK S.A.S. had the option to reject the musical compositions, or include the musical compositions on its service.  Defendant BLOGMUSIK S.A.S. elected the latter, but was not subject to Section 115 because the use was solely external to the United States.

45.     In or about October 2014, BLOGMUSIK S.A.S. made its service available in the United States, along with DEEZER INC., which then vested in Defendants the statutory obligation under Section 115 to obtain a mechanical license via an NOI (or agreement between the parties) for each work. Annexed as **Exhibit C** and incorporated hereto as if stated at length herein, is a chart of the compositions which Defendant elected to make available on its service, along with the dates Defendant made the compositions available and whether an untimely and expired NOI was served.

11

46. As of the date of this Complaint, Defendants have failed to serve an NOI for one hundred and one (101) of YESH's one hundred and sixteen (116) Copyrighted Compositions.

47. Defendant BLOGMUSIK S.A.S. did manage to serve an NOI on September 1, 2014 for a single song -- "*A Few Words*". That NOI was for one year and expired on August 31, 2015, and no renewal NOI was served. As there is no current license, compulsory or otherwise, for "*A Few Words*", Defendants have infringed YESH's rights under Section 115 for that Copyrighted Composition.

48. BLOGMUSIK S.A.S. served three additional NOIs on June 25, 2015, June 29, 2015, and September 12, 2015, respectively, covering fifteen (15) of the Copyrighted Compositions. Defendant BLOGMUSIK S.A.S., however, made those fifteen (15) Copyrighted Compositions available on its service in October 2014. Consequently, those NOIs are facially invalid because they were not served within thirty (30) days of being made available. The NOIs at issue also give a false date of first use or fail to give a date of first use.

49. Attached as **Exhibit D** are the four NOIs served by BLOGMUSIK S.A.S. on YESH.

50. No argument can be made that every one of YESH's one hundred and sixteen (116) Copyrighted Compositions is being made available on Defendants' Deezer Service, with no license under Section 115, and Defendant has intentionally infringed each.

51. Defendants obviously knew of their duty to serve NOIs.

52. On or about June 20, 2015, Defendants were contacted by correspondence from Plaintiffs' counsel, and notified that YESH had not received valid NOIs for any of the musical compositions being streamed on the Deezer Service; Defendants did not respond.

12

53. In the four months after Defendants were put on notice by counsel, Defendants continued to stream YESH's one hundred and sixteen (116) Copyrighted Compositions. This is the definition of "intentional" under 17 U.S.C. § 504(c)(2). Defendants acted willfully and wantonly, or at least with reckless disregard to YESH's rights.

54. Defendants are liable for infringement of YESH's exclusive rights to the Copyrighted Compositions as provided by clauses (1) and (3) of section 106 of the Copyright Act.

55. Upon information and belief, Defendants made a business decision that it was more cost effective to infringe the copyrights of independent musicians than spend the time and money contacting every rights owner.

## FACTS APPLICABLE TO PLAINTIFF JOHN K. EMANUELE

56. Plaintiff EMANUELE released two collections of music, via TuneCore, for his solo project called "Zero Bedroom Hotel". The first collection, titled *Filmmuzic*, had 19 tracks and the second collection, titled *Complete Discography 2009-2013*, contained 90 songs. The 109 songs are covered by two copyright registrations attached as part of **Exhibit B**.

57. Defendants made EMANUELE's one hundred and nine (109) musical compositions available on its service in the United States, but failed to serve an NOI for any of them.

58. Defendants cannot be heard to argue that it has intentionally infringed both Registered Copyrights of John K. Emanuele.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

59. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length here.

13

60. Defendants have, without a "mechanical" license under Section 115 from Plaintiffs, reproduced and publicly performed and/or publicly distributed Plaintiffs' Copyrighted Compositions through its interactive web-based and smartphone application subscription streaming service.

61. Plaintiffs have valid, registered copyrights, and Defendants have reproduced and offered the Copyrighted Compositions for streaming, including permanent and temporary digital download, without a license, thus infringing Plaintiffs' rights under Section 115 of the Copyright Act. Irreparable injury is presumed here as Plaintiffs have established a prima facie case of copyright infringement.

62. Even after Defendants were put on notice, over four months ago, that it had no license or authority, Defendants elected to continue to reproduce and publicly perform and/or publicly distribute YESH's Copyrighted Compositions through its subscription service.

63. The making or the distribution, or both, of all Copyrighted Compositions without the payment of royalties is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

64. As a direct and proximate result of each of the Defendant's infringement, Plaintiffs have incurred damages, as described more fully above. Pursuant to 37 C.F.R. § 385, Plaintiffs are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like Defendants'.

65. Plaintiffs may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but no less than $30,000, for each infringement of each copyright registration identified in **Exhibit A**, as available under the law.

66. Defendants' predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages. Defendants knew that its actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

67. Defendants certainly acted with conscious knowledge after it was put on notice by Plaintiffs in June of 2015.

68. Defendants acted with reckless disregard toward Plaintiff's rights.

69. Defendants intentionally made a business decision to avoid the costs of serving NOIs in a race to make its library as large as possible.

70. Defendants' knowledge may also be inferred from its conduct including the reckless disregard of the Plaintiffs' right (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A. Plaintiffs demands statutory damages in the amount of $150,000 per infringement for each Copyright Registration identified in the annexed **Exhibit A**, but in no case less than $30,000 with respect to each infringement, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

B. for Plaintiffs' actual damage if Plaintiffs so elect;

C. attorneys' fees costs and disbursements in this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and,

D. for such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: November 1, 2015								**GARBARINI FITZGERALD P.C.**

By: _____
Richard M. Garbarini
Richard M. Garbarini (RG 5496)
250 Park Avenue
7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9479